STATE OF FLORIDA, ex rel., KENNETH R. BELDEN, v. CITY OF MIAMI, a municipality duly organized and existing under the laws of the State of Florida; RICHARD G. DANNER, City Manager of the City of Miami, Florida; and FRANK MITCHELL, Chief of Police of the City of Miami, Florida.

32 So. (2nd) 821                      June Term, 1947
December 12, 1947                Special Division A

*Aronovitz, Weinkle & Aronovitz,* for appellant.

*J. W. Watson, Jr.,* for appellees.

SEBRING, J.:

The appellant, Belden, instituted a mandamus proceeding in the Circuit Court of Dade County to require the appellee, City of Miami, to reinstate him as a police officer of the municipality. The petition upon which the alternative writ was based alleged, in substance, that the appellant was appointed by the city as a police officer in January 1943; that the rules of the Civil Service Board governing the civil service employees of the City provided in part that if anyone should be employed as a police officer he should be considered as holding only a temporary position for the first one-year period of employment but that thereafter, if the employment was continued, the employment should become permanent; that although relator was above the age limit formerly enforced by the Civil Service Board, nevertheless, because of the state of war which existed at the time of his employment, the Board had adopted an emergency provision which provided that if relator could pass the physical examination and the written examination required, he would be eligible for permanent service after one year's employment; that relator did pass the physical examination, and the written examination, required, and therefore became qualified in all respects to hold the position of police officer in the City of Miami, and that he did retain in the employment of the City for more than one year, by reason whereof his employment became permanent; but that nevertheless, the City, on December 27, 1946, and without just cause, discharged the relator without preferring any charges or giving

him an opportunity for a hearing, all of which he was entitled to have as a civil service employee of the City.

An answer was filed to the alternative writ, in which the respondent denied that the relator had ever qualified to become a permanent police officer of the City of Miami; that he had ever acquired a civil service status; that he had ever been placed upon an eligible list for appointment to a position in the classified service, as required by the rules of the Civil Service Board; or that he had ever passed the written examination required by the Board as a condition precedent to becoming eligible to be placed upon such a list. The answer avers further that respondent's appointment to employment was temporary and not permanent; that such employment had been authorized only by reason of the fact that a state of war had existed at the time of employment, which necessitated the hiring of men not otherwise eligible, to take the place of police officers called into the service; that many of these men had returned and that also a number of other men who could comply, and had complied, with the rigid employments of the civil service system prior to the war, were now available for employment.

By stipulation of the parties it was agreed that certain exhibits attached to the answer, and certain other matters relevant to the issues, should be considered by the trial court issuing the alternative writ of mandamus. On final hearing upon the pleadings and evidence the trial court found that by reason of the peculiar nature of the conditions under which the relator had become employed, he had acquired no civil service status with the City and hence was not entitled to reinstatement as a police officer.

This appeal is from the order of the trial judge which found against the relator and dismissed the proceedings.

The material facts appearing from the pleadings and evidence are substantially as follows: Under the Miami Civil Service rules existing prior to 1943, the maximum age for the employment of police officers was age thirty. Because of an emergency situation created by the war, the City of Miami, on May 27, 1943, enacted a resolution entitled "a resolution ap-

proving an amendment to the Civil Service Code of Rules and Regulations . . . increasing the maximum age limits for employees entering the fire and police divisions during the period of the National Emergency, and further providing that such employees shall be temporary and possessing no civil service status." By express provisions of the resolution discretion was vested in the Civil Service Board to select and recommend applications for employment in these two divisions, accordingly; and the resolution further provided: "That the employees in both the Police and Fire Divisions employed, as hereinabove set forth, shall be temporary employees for the duration of the National Emergency and shall possess no Civil Service rights or protection whatsoever and may be dismissed without a hearing upon the recommendation of the Director of Public Safety."

In January 1943 the appellant filed his application and filled out a questionnaire for employment as a police officer. The questionnaire recited on its face that it was to be used only for applicants applying for temporary employment. At the time the application was made, appellant was 38 years of age and hence above the age limit of 30 years, fixed by the regular civil service rules for permanent employment of police officers. He was given a physical and an oral, *not written,* preliminary examination, both of which he passed to the satisfaction of the Civil Service Board under the emergency conditions prevailing. Thereafter, but prior to receiving employment, he signed a "Waiver for Emergency Appointments" blank, which contained the language: "I hereby accept employment on a temporary basis with the City of Miami as an Emergency Policeman . . . and I understand, agree, and accept as a condition precedent thereto, that this temporary employment will be for the duration of the National Emergency only, that I may be removed and discharged by the Director of my Department without the formality of charges having been preferred against me and without a hearing subsequent thereto. No permanent Civil Service rights shall accrue as a result of this temporary appointment or as the result of my service thereunder, irrespective of the length of my service . . . "

On January 29, 1943, the appellant received a warrant of authority from the City Manager of the City of Miami, which read: "You have met the requirements of the Civil Service Board of the City of Miami, Florida, pertaining to temporary employment in the Police Division and upon its recommendation, by authority vested in me as City Manager . . . I hereby appoint you a temporary Policeman for the duration of the present National Emergency . . . effective as of February 1, 1943."

The appellant served as a member of the Miami Police Force until December 1946. On December 3, 1946 the Civil Service Board of the City ruled that certain emergency employees in the Division of Police possessing temporary appointments only, should be removed from the City payroll at the close of December 27, 1946, and replaced by applicants on the eligible register of the Civil Service Board entitled to employment under regular civil service status. Among the names appearing on the list of those whose services were to be dispensed with was that of the appellant.

By the written stipulation of the parties, heretofore referred to, it is agreed that since April 1946 approximately 75 policemen have been employed by the City after competitive examination, and that there are now approximately 26 policemen "who previously were employed by the City but who left and became members of the armed forces of the United States Government and may at some time in the future make application for the return of their positions in the police department."

We are of opinion that the trial court acted correctly in denying the relief asked for in the alternative writ of mandamus. It is clear from the evidence that the relator never acquired a civil service status entitling him to permanent employment in the Police Division of the City; and never became a member of the classified service under the civil service system. At the time he was employed he was over the regular age limit. He did not take a competitive written examination, which was necessary under the civil service rules to entitle him to be placed on the "eligibile list" from which members of

the classified service had to be chosen. The provisions of the resolution under which he was hired specifically provided that "such employees shall be temporary" and shall possess "no civil service status." The waiver signed by him at the time he accepted employment and the warrant of authority issued him by the City Manager were to the same effect.

The fact that the warrant of authority from the City Manager to the appellant stated "I hereby appoint you a temporary Policeman for the duration of the emergency" cannot, in our opinion, be construed as meaning that the *minimum* tenure of employment of the appellant was, necessarily, to be for the entire duration of the "National emergency," should, in all events, mark the termination of his temporary employment contract.

The appellant continued in his position of temporary employment with the City for a period of approximately four years. By the latter part of 1946 the City has again been able to establish an eligible roster for police officers meeting the normal civil service requirements for permanent employees in the Police Division, one of the requirements being that the age of an applicant should not exceed 30 years. With men of younger age available, many of whom had returned from the armed services to fill their former position, the City took steps to remove from its police roster certain police officers who had not acquired civil service status. The appellant was one of the temporary employees dropped.

It is indeed an unfortunate thing for the appellant that his name should have been included in the list, but we are convinced that under the law, and under the appellant's terms of employment, the City was at liberty to take the action it did and sever appellant's connection with the Police Division without according him a hearing. See Campbell v. Board of Civil Service Commission of the City of Los Angeles, 76 Cal. App. 399, 173 P. 2nd 58; Ticknor v. City of Sacramento, (Cal.) 181 P. 2nd 893, which are cases reaching the same conclusion upon a similar set of facts.

It follows from the conclusion we have reached that the judgment appealed from should be affirmed.

It is so ordered.

THOMAS, C. J., TERRELL and BUFORD, JJ., concur.